UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DIALLO RAFIK A. MADISON, 94-A-7376,

                            Plaintiff,

      -v-

DR. JOHN ALVES, NURSE K. DYAL,

                            Defendants.
_____

DECISION AND ORDER

05-CV-6018 CJS

INTRODUCTION

In this action, brought to pursuant to 42 U.S.C. § 1983, plaintiff Diallo Rafik Madison ("Plaintiff"), a prison inmate, alleges that Defendants violated his First and Eighth Amendment rights, by acting with deliberate indifference to his serious medical needs and then retaliating against him when he complained. Now before the Court is Defendants' motion for summary judgment (Docket No. [#89]). For the reasons that follow, the application is denied.

BACKGROUND

Unless otherwise noted the following are the undisputed facts of this case viewed in the light most-favorable to Plaintiff. At all relevant times, Plaintiff was an inmate in the custody of the New York State Department of Correctional Services ("DOCS"). At all relevant times, defendants Dr. James Alves ("Alves") and Nurse K. Dyal ("Dyal") were employed by DOCS at Southport Correctional Facility ("Southport"). Plaintiff's claims arise from a six-month period that he was housed at Southport, between June 2002 and January 2003.

1

In 2001, prior to his placement at Southport, Plaintiff injured his elbow at Fishkill Correctional Facility when he fell on a wet shower floor. Although X-rays of the elbow were normal, (Plaintiff Deposition at 20), Plaintiff developed a painful lump on the elbow. Plaintiff states that the elbow was painful when extended, and that he had "constant pain and discomfort." (*Id*. at 21, 60). On or about April 10, 2002, while Plaintiff was housed at Eastern Correctional Facility, a physician, Dr. Guzman, concluded that Plaintiff had a ganglion cyst and ordered an orthopedic evaluation. In June 2002, prior to such evaluation, Plaintiff was transferred to Southport. Alves reviewed Plaintiff's medical records, and apparently agreed with Dr. Guzman's recommendation for an orthopedic evaluation. Additionally, Alves prescribed pain medication and approved Plaintiff's request for an elastic elbow sleeve, which was designed to prevent Plaintiff from fully-extending the elbow. (*Id*. at 22-24).

In or about June 2002, Plaintiff asked Dyal to see a doctor concerning his elbow pain, and Dyal responded that Alves was on vacation and would not return for about a month. (*Id*. at 24-25, 28). On June 17, 2002, Plaintiff filed an inmate grievance, complaining about the fact that he had not yet been seen by an orthopedic specialist. The grievance was granted in part, and officials noted that they were in the process of obtaining an appointment.

On August 19, 2002, Plaintiff met with Alves. Alves subsequently cancelled the request for an orthopedic evaluation. In that regard, Alves contends that he examined Plaintiff and found that Plaintiff had a full range of movement in the elbow and no tenderness. Alves maintains that as a result of his examination he concluded that Plaintiff had bursitis and not a ganglion cyst, and that there was no need for an orthopedic

evaluation. (*Id*. at 34-35, 43). However, Plaintiff alleges that Alves also asked him about grievances that he had filed concerning his medical care. (*Id*. at 29). Plaintiff claims that Alves was "uptight" because Plaintiff had complained that it was taking too long to be seen by an orthopedic specialist. (*Id*. at 30). Plaintiff further states that Alves became angry when Plaintiff disagreed with his assessment and asked for copies of his medical records. Plaintiff states that Alves said that as long as Plaintiff was at Southport, he would not be seeing an orthopedic specialist, since it would be a waste of taxpayers' money. (*Id*. at 31). Finally, Plaintiff contends that Alves told him, "Get the fuck out of my office." (*Id*. at 32).

A few days later, when his pain medication prescription ran out, Plaintiff did not receive a refill for several days. (*Id*. at 36-37). Plaintiff blames Alves for stopping his medication, since on August 22, 2002, Dyal told him that his medication was stopped because he "blew it," and that Alves didn't want to give him anything. (*Id*. at 37-38, 45). After five days, Plaintiff's pain medication was continued. (*Id*. at 38, 53). Plaintiff claims that Alves also subsequently denied his request for a medical order allowing him to be handcuffed in front, rather than behind his back, due to pain in his elbow. (*Id*. at 39). Plaintiff further contends that Alves and Dyal denied him a new elbow sleeve when the old one became worn.

On January 9, 2003, Plaintiff was transferred from Southport to Great Meadow Correctional Facility ("Great Meadow"). In February 2003, a physician's assistant at Great Meadow removed the cyst from Plaintiff's elbow. Plaintiff contends that the surgery gave him some relief, but that he continued to experience pain. To date, no DOCS physician besides Guzman has recommended that Plaintiff have an orthopedic consultation.

On December 27, 2002, Plaintiff commenced the subject action. Liberally construing the record, Plaintiff is asserting two claims against Defendants: 1) an Eighth Amendment deliberate indifference medical claim; and 2) a First Amendment retaliation claim. Following a period of discovery, Defendants filed the subject summary judgment motion. Defendants maintain that they were not deliberately indifferent to Plaintiff's medical needs, since he did not need to see an orthopedic specialist, and since the alleged denial of medication would have been insignificant. Defendants apparently do not agree that Plaintiff is also asserting a retaliation claim, since they do not discuss such a claim.

## ANALYSIS

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e). Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged

5

> constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
>
> ***
>
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

Plaintiff alleges that Defendants violated his Eighth Amendment rights by denying him medical treatment, and the legal standard for such claims is clear:

> In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs. This standard incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.
>
> Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation. [T]he Supreme Court [has] explained that the Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat a prisoner's serious illness or injury resulting in the infliction of unnecessary pain and suffering. Because society does not expect that prisoners will have unqualified access to health care, a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care. Similarly, a prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety, a state of mind

equivalent to the familiar standard of 'recklessness' as used in criminal law. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir.2003) (citations and internal quotations omitted). Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation. *See, Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998)("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). Similarly, negligence constituting medical malpractice, without more, will not establish a constitutional claim. *Id*. (citation omitted). However, "[i]n certain instances, a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan."*Id*. (citations and internal quotation marks omitted); *see also, Id*. at 704 ("Crucially, [the plaintiff] has also alleged that Dr. Moore and Dr. Murphy recommended extraction not on the basis of their medical views, but because of monetary incentives. This allegation of ulterior motives, if proven true, would show that the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical judgment.").

With regard to Plaintiff's First Amendment retaliation claim, the applicable legal principles are also clear:

> Courts properly approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act. Thus, . . . a plaintiff asserting First Amendment retaliation claims must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.

*Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citations and internal quotation marks omitted). The filing of prison grievances is protected speech. *Id*. With regard to the alleged

adverse action,

> [o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. Otherwise the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection. In making this determination, the court's inquiry must be tailored to the different circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse.
>
> ***
>
> Insulting or disrespectful comments directed at an inmate generally do not rise to this level.

*Id.* at 353 (citations and internal quotation marks omitted). Moreover, "[i]n order to satisfy the causation requirement, allegations must be sufficient to support the inference that the [protected] speech played a substantial part in the adverse action." *Id*. at 354 (citation and internal quotation marks omitted).

In this case, upon reviewing the entire record in light of the foregoing applicable legal principles, the Court finds that there are triable issues of fact that preclude summary judgment.

## CONCLUSION

Defendants' summary judgment motion [#89] is denied. The Court will issue a separate Pre-trial Order.

So Ordered.

Dated:     Rochester, New York
           December 2, 2008

                                        ENTER:


                                         /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge